UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANDICE CLARK MORRIS,

    Plaintiff,

v.

KIA MOTORS CORPORATION, KIA
AMERICA, INC., and GRACO
CHILDREN'S PRODUCTS,
INCORPORATED,

    Defendants,

HYUNDAI AMERICA TECHNICAL
CENTER, INC., CHADD PRICE,
BASAVARAJ KORADDI, VINAY
KUMAR PALLERLA, and KURT
SHANKS,

    Movants.
_____/

Case No. 2:24-mc-51120
District Judge Matthew F. Leitman
Magistrate Judge Kimberly G. Altman

## MEMORANDUM AND ORDER DENYING EMERGENCY MOTION TO QUASH (ECF No. 1)

I.      Introduction

This is a miscellaneous action brought by the recipients of a third-party subpoena in an action pending in the Eastern District of Texas. In the underlying action, plaintiff Candice Clark Morris is suing a car manufacturer and a car seat manufacturer on behalf of her child, who was injured in a car accident. *See* ECF No. 4, plaintiff's response. According to plaintiff, the car manufacturer, Kia

1

Motors Corporation (Kia), allegedly "utilizes a global network of separately incorporated research and development centers to test and improve the engineering safety of their designs." (ECF No. 4, PageID.101). "One such center, located in Detroit, is the Hyundai American Technical Center, Inc. [(HATCI)]." (*Id.*).

Plaintiff's counsel issued four subpoenas seeking to depose current and former employees of HATCI regarding car safety evidence. The individuals are Chadd Price, Basavaraj Koraddi, Vinay Kumar Pallerla, and Kurt Shanks. Those individuals now move to quash those subpoenas or for entry of a protective order to prevent them from being deposed. (ECF No. 1). Movants' miscellaneous action has been referred to the undersigned for full pretrial proceedings. (ECF No. 2). Plaintiff has responded to the motion (ECF No. 4). Movants did not file a reply, and the time for doing so has passed. A hearing on the motion was held on October 24, 2024.

For the reasons that follow, the emergency motion to quash subpoenas and for a protective order will be DENIED.

        II.       Legal Standards

        A.       Motion to Quash

Under Federal Rule of Civil Procedure 45(a), "a party may serve a subpoena on a non-party . . . commanding that party to 'attend and testify; produce designated documents, electronically stored information, or tangible things in that

person's possession, custody, or control; or permit the inspection of premises' at a specified time and place." *Atlantech, Inc. v. Am. Panel Corp.*, No. 11–50076, 2011 WL 2078222, at *2 (E.D. Mich. May 24, 2011); *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a non-party may be compelled to produce documents and tangible things or to permit an inspection.").

A court *must* quash a subpoena if it (1) fails to give the party a reasonable time to comply or requires compliance beyond the applicable geographic limits, (2) requires the disclosure of either privileged or other protected matter in the absence of an applicable exception or waiver, or (3) would be unduly burdensome. Fed. R. Civ. P. 45(c)(3)(A); *see also Atlantech, Inc.*, at *2.

A court *may* quash or modify a subpoena if it requires the disclosure of (1) "a trade secret or other confidential research, development, or commercial information" or (2) "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(c)(3)(B); *see also Atlantech, Inc.*, at *2. "The party seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted." *Atlantech, Inc.*, at *2.

"Ordinarily, a party has no standing to oppose a subpoena issued to a non-party unless the party can demonstrate a claim of privilege or personal right in the documents sought." *Malibu Media, LLC v. Doe subscriber assigned IP address*

3

*76.190.140.193*, No. 1:15 CV 1342, 2015 WL 6758219, at *2 (N.D. Ohio Nov. 5, 2015). "Such rights or privileges have been recognized with respect to personal bank records, information in a personnel file, corporate bank records or Indian tribal records." *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-cv-0722, 2020 WL 12968432, at *3 (M.D. Tenn. Apr. 23, 2020). However, "[t]hat documents are confidential is not in itself grounds for quashing a subpoena." *Id*. (internal quotation marks and citations omitted). Additionally, "the party seeking to quash a third-party subpoena must meet a heavy burden of proof." *Proto Gage, Inc. v. Fed. Ins. Co.*, No. 21-12286, 2022 WL 1598621, at *2 (E.D. Mich. May 19, 2022).

B. Motion for a Protective Order

"Even in the absence of standing to move to quash, courts within the Sixth Circuit have interpreted Rule 26(c) to permit a party to seek a protective order to preclude discovery demanded by a third-party subpoena." *Pictsweet Co.*, at *3; *see also Bridgestone Ams., Inc. v. Intn'l Business Machs. Corp.*, No. 3:13-cv-1196, 2016 WL 11786198, at *5 (M.D. Tenn. May 16, 2016) ("Where discovery is requested from a third party and the information sought affects a litigant's interests, the litigant may seek a protective order on behalf of the third party."). "A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016).

4

"Under Federal Rule of Civil Procedure 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from 'annoyance, embarrassment, oppression, or undue burden or expense.' " *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 235 (6th Cir. 2016).  Additionally, a district court is tasked with balancing "the right to discovery with the need to prevent fishing expeditions." *Id*. at 236-237 (internal quotation marks and citation omitted).

"To sustain a protective order under Rule 26(c), the moving party must show good cause for protection from one (or more) harms identified in Rule 26(c)(1)(A) with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id*. at 236 (internal quotation marks and citation omitted).  "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *Id*. (internal quotation marks and citation omitted); *see also Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) ("To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements.").

### III.   Discussion

#### A.   Parties' Arguments

5

According to the parties, the underlying litigation involves the 2014-2018 and 2019-2024 model runs of the Kia Forte. Movants argue that none of the four requested deponents was involved in the development of the relevant parts of either model run. They say that the requested depositions are plaintiff's attempt to use discovery to "go fishing," which is improper. *See Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). Further, movants argue that the subpoenas should be quashed, or a protective order entered, because compliance would be an undue burden or expense since Kia has already identified other engineers that can address the topics at issue.[1] *See* Fed. R. Civ. P. 45(d)(1). They further note that even a "seemingly low burden" can be "an undue one" under these circumstances. *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 2:09-MC-50356, 2009 WL 1543451, at *3 (E.D. Mich. June 2, 2009).

In response, plaintiff argues that HATCI describes itself as "the design, technology, and engineering arm for all North American models of the Korean-based Hyundai-KIA Motors Group." (ECF No. 4, PageID.101) (citing various HATCI online publications). HATCI further describes one of its functions as

---

[1] According to plaintiff's counsel, these engineers are South Korean nationals located in South Korea, and plaintiff's counsel intends to travel there to depose them in January 2025. This is not disputed by HATCI.

6

related to vehicle safety, making its employees' depositions relevant to the safety of the vehicle in question.

Based on these representations, plaintiff says she attempted to identify HATCI individuals with the most relevant experience to answer questions relating to the 2014-2018 and 2019-2024 model runs of the Kia Forte. Plaintiff also says that Kia did not identify any HATCI employees as having relevant information, which led her to identifying these individuals on her own. Plaintiff further asserts that "[t]he subpoenas in question were anything but a 'fishing expedition;' rather, they were precisely tailored to secure vital information directly pertinent to the issues at the heart of this case." (*Id.*, PageID.102).

Plaintiff also notes that one of the relevant Kia deponents, Yeom Kunchul, stated that he was unable to locate a computer model on the side impact structures of either relevant Kia Forte model run, and thus, information on the computer model was not accessible by other means. (ECF No. 4, PageID.108).

Regarding the logistics of the depositions, plaintiff says that each proposed deponent was requested to appear for a half-day deposition at a location near their place of work and home, that plaintiff has promised to fulfill the requisite appearance fees, and that plaintiff is willing to accommodate any adjustments in time or location for the convenience of the deponents. Plaintiff therefore asserts that there is no undue burden or expense to any of the proposed deponents.

7

B.   Analysis

At the onset, movants do not meet the requirements to quash the subpoenas for mandatory or permissive reasons. The subpoenas do not (1) fail to give the parties a reasonable time to comply or require compliance beyond the applicable geographic limits, (2) require the disclosure of either privileged or other protected matter in the absence of an applicable exception or waiver, or (3) appear unduly burdensome. Fed. R. Civ. P. 45(c)(3)(A); *see also Atlantech, Inc.*, at *2. Further, they do not require the disclosure of (1) "a trade secret or other confidential research, development, or commercial information" or (2) "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(c)(3)(B); *see also Atlantech, Inc.*, at *2.[2]

The more appropriate route for preventing any of the depositions going forward would be a protective order. This follows the guidelines of Rule 26(b) by measuring the proportionality of the discovery to the needs of the case, *see State Farm, supra,* and can be entered wherever the discovery request would cause

---

[2] Arguably, as discussed below, Kurt Shanks' testimony could touch on the second prong for when a Court *may* quash a subpoena, but the Court is not *required* to quash the subpoena under this circumstance. Furthermore, as will be discussed, plaintiff's counsel explained at the hearing that his questioning of all four individuals would be limited to their personal knowledge relevant to the *Morris v. Kia* litigation.

8

annoyance, undue burden, or undue expense, *in re Ohio Execution Protocol Litig.*, *supra*.

"Undue burden [for a non-party subpoena] is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *Id*. (quoting *Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136).

Here, balancing the need for discovery and the burdens related to the subpoenas, the Court finds that plaintiff should be allowed to subpoena the individuals in question. Each individual will be discussed in turn below.

1. Chadd Price (Price)

Price appears to be the former "Director and Head of Vehicle Engineering" for HATCI, who also held roles as "Director and Head of Project Intelligence" and "Head of Product Planning" prior to that. Price says that he had no involvement in the design, development, or testing of the occupant cabin structure for the Subject Vehicle or the 2014-2018 Kia Forte model run, and that he had no involvement

9

with the design of the occupant cabin structure for the 2019-2024 Kia Forte model run and does not recall having any involvement with testing of the same.  (ECF No. 1, PageID.14).

In response, plaintiff says that Price's roles with HATCI would require him to have "vast personal knowledge concerning the processes which can be used to research and develop safe vehicles at HATCI, which were available to Kia in North America when it came to the Kia Forte."  (ECF No. 4, PageID.111).  Plaintiff also points to Price's supervisory role with HATCI and argues that this would give him personal knowledge of the teams assigned to the relevant vehicle and model runs and the integration of the work of various teams relating to the vehicle's crash and safety analysis.  Plaintiff also notes that Price himself did not raise any concerns regarding the scheduled deposition until three weeks after service of the subpoena, at which time HATCI filed the present motion.

It is not lost on the Court that HATCI did not offer the identity of any current or former employer that could provide plaintiff with the information she seeks, but also did not unequivocally state that no one at HATCI could provide such information.  Further, information from the South Korean engineers that plaintiff plans to depose may also be limited, as the software version of the computer model used to examine the side impact structure for the relevant Kia Forte models could not be located.  (ECF No. 4, PageID.108).  Although Price attests that he did not

work on the specific model or model runs of the Kia Forte at issue, he is in the best position to speak to HATCI's involvement with the safety issues at play in the underlying litigation, HATCI's human and computer processes involved, and other individuals who may be able to provide plaintiff with relevant information. Further, HATCI has failed to show a meaningful level of harassment, annoyance, undue burden, or undue expense to justify quashing the subpoena or protecting the proposed deponent. Morris has explained that Price would play a key role in identifying the computer programs and data that would have been used to evaluate the relevant Kia Forte models, leading to pertinent questions for other HATCI engineers and requests for production of relevant data. Therefore, there is no reason the Court should prevent this deposition from going forward. However, the Court emphasizes that questions should be limited to matters relating to the deponent's personal knowledge and not opinion or speculation.

      2. Basavaraj Koraddi (Koraddi) and Vinay Pallerla (Pallerla)

Movants argue that Koraddi's employment with HATCI began in 2023 and he could therefore provide no relevant information regarding the vehicle or model runs in question. Koraddi also attests that he was not involved in the design, development, or testing of the 2019-2024 Kia Forte model run, and that his work experience has not involved sedans. Plaintiff argues that Koraddi could provide

11

relevant information based on his role in Computer Aided Engineering (CAE) at HATCI, similar to the work of Pallerla discussed below.

Pallerla began working for HATCI in 2022, and thus according to movants he lacks personal knowledge of the subject vehicle or model runs in question prior to that year. Further, Pallerla's work has also not involved sedans, meaning that he lacks knowledge relevant to the 2019-2024 Kia Forte model run. Plaintiff argues that Pallerla's work in the Computer Aided Design and Computer-Aided Engineering department, along with his experience with "structural optimization at early design stages to guide the design direction" of Kia vehicles and "computer benchmarking" of competitive vehicles, makes him a relevant witness. (ECF No. 4, PageID.106).

Based on the arguments presented at the hearing, the Court finds that plaintiff has justified going forward with the depositions of Koraddi and Pallerla. Neither Kia nor HATCI have provided plaintiff with the identities of anyone who *has* directly worked on the relevant Kia Forte models. With information from Price about the computer models HATCI used to assess the safety of Kia vehicles, Koraddi and Pallerla's depositions would likely lead to information allowing plaintiff to request data on the subject vehicle that is no longer available from the engineers Kia identified. Assuming that questions are limited to information about which Koraddi and Pallerla have personal knowledge, these depositions would be

12

proportional to the needs of the case and would not be outweighed by concerns of harassment, annoyance, undue burden, or undue expense.

### 3. Kurt Shanks (Shanks)

Finally, as to Shanks, movants say that his employment with HATCI ended in 2016 and as such, he also lacks personal knowledge of the relevant matters because he was not employed during the design or testing of the 2019-2024 Kia Forte model run and he does not recall having any involvement with the design or testing of the 2014-2018 model run. (ECF No. 1, PageID.14).

Plaintiff notes that although Shanks is retired, he worked specifically on side impact research involving the safety of small occupants and children, including publication of a 2012 paper specifically addressing the risks and safety issues posed to occupants in side impact collisions. *See* ECF No. 4-13. Plaintiff says that Shanks reported using a computer model of the Kia Forte to simulate side impact crashes and examine safety issues and that his paper was sponsored by Hyundai/Kia and reported internally at Kia. (ECF No. 4, PageID.109). Plaintiff also notes that Shanks communicated directly with plaintiff's counsel prior to the present motion and "unequivocally indicated his intent to appear at the designated place and time for his deposition without objection" and without raising any concern about an undue burden. *See* ECF No. 4-6, email correspondence.

Despite having retired from HATCI in 2016, there is no reason to quash the

13

subpoena or prevent the Shanks deposition from going forward. Shanks' specialized knowledge of safety and side impact collisions relating to Kia vehicles could result in the discovery of admissible evidence. Furthermore, Shanks would likely also have information that would lead to the production of relevant documents and data, if any, that Morris could then request from HATCI or Kia.

Movants argued at the hearing that the Shanks deposition in particular would be the most likely to lead to *opinion* evidence, and that Shanks was not disclosed as an expert and may not qualify as one. However, plaintiff's counsel reiterated that his questions at the deposition would be limited to those on which Shanks and the other deponents have personal knowledge. With that in mind, the Court will allow the Shanks deposition, and the others, to go forward.

## IV.    Conclusion

For the reasons stated above, the motion to quash Plaintiff's subpoenas or, alternatively, for a protective order (ECF No. 1), is DENIED. Plaintiff may issue new subpoenas for the four individuals at issue—Price, Koraddi, Pallerla, and Shanks—to be held reasonably near their homes and places of work, with costs to be covered by plaintiff. This will minimize the undue burden and expense to the deponents while allowing plaintiff to obtain evidence that is proportional to the needs of the underlying litigation.

SO ORDERED.

Dated: October 28, 2024  s/Kimberly G. Altman
Detroit, Michigan  KIMBERLY G. ALTMAN
 United States Magistrate Judge

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 28, 2024.

                                                    s/Kristen Castaneda
                                                    KRISTEN CASTANEDA
                                                    Case Manager